IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

§
JOHNNY R. LOZANO, §
§
Plaintiff, §
§
vs. § Civil Action No. 1:04-CV-0227-C
§ ECF
§ Referred to the U.S. Magistrate Judge
JO ANNE B. BARNHART, §
Commissioner of Social Security, §
§
Defendant. §

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed October 4, 2004, for

judicial review of the administrative decision of the Commissioner of Social Security denying

Plaintiff's application for a period of disability and disability insurance benefits under Title II of the

Social Security Act.  Plaintiff filed a brief in support of his complaint on June 8, 2005, and

Defendant filed her brief on June 29, 2005.  The United States District Judge, pursuant to 28 U.S.C.

§ 636(b), referred this matter to the United States Magistrate Judge for report and recommendation,

proposed findings of fact and conclusions of law, and a proposed judgment.  This court, having

considered the pleadings, the briefs, and the administrative record, recommends that the United

States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I.    STATEMENT OF THE CASE

Plaintiff filed an application for a period of disability and disability insurance benefits on

May 11, 2000, alleging disability beginning November 17, 1999.  Tr. 14, 552-54.  Plaintiff's

application was denied initially and upon reconsideration.  Tr. 14, 555-58, 560-64.  Plaintiff filed

a Request for Hearing by Administrative Law Judge on March 8, 2001, and this matter came for hearing before the Administrative Law Judge ("ALJ") on January 22, 2002. Tr. 14, 25, 27-48. Plaintiff, represented by a non-attorney, testified in his own behalf. Tr. 30-47. The ALJ issued a decision unfavorable to Plaintiff on March 26, 2002. Tr. 11-19.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements through the date of his decision and that Plaintiff had not engaged in substantial gainful activity at any time since November 17, 1999. Tr. 15, 18. He found that Plaintiff has "severe" impairments, including coronary artery disease, status post deep venous thrombosis ("DVT") of his left leg, diabetes, and hypertension. Tr. 16, 18. He found that Plaintiff's obesity was "not severe," having no more than a minimal effect on his ability to work, in accordance with Social Security Ruling 00-3p (May 15, 2000).[1]  Tr. 17.  The ALJ also found that Plaintiff's mental impairment, depression, was not a severe impairment, imposing no greater than mild limitations on Plaintiff's activities of daily living, social adequacy, and concentration, and resulting in no episodes of decompensation, as described by 20 C.F.R. §§ 404.1520a(c), 404.1521. Tr. 16. The ALJ further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 17-18. Thereafter, the ALJ considered Plaintiff's residual functional capacity ("RFC").

The ALJ noted Plaintiff's history of treatment for unstable angina and coronary disease. Tr. 15. He noted the results of testing and also indicated that there was an issue of difficulty paying for medication, although Plaintiff continued to smoke despite the advice of his physicians. *Id*. The ALJ

---

[1]       Social Security Ruling 00-3p (May 15, 2000) was superseded by Social Security Ruling 02-1p (September 12, 2002).

noted that Plaintiff also has noninsulin dependent diabetes which has not been well-controlled at times.  Tr. 16.

The ALJ found that Plaintiff has shown by acceptable diagnostic techniques the existence of underlying medically determinable impairments that could reasonably be expected to produce some functional limitations.  *Id*.  He noted Plaintiff's allegations of having to use a wheelchair at home and keep his leg elevated 6-7 hours daily.  *Id*.  He also noted that Plaintiff used a wheeled walker at the time of the hearing.  *Id*.  The ALJ noted that Plaintiff's subjective allegations of symptoms suggest a greater degree of impairment than was demonstrated by the medical evidence. *Id*.  He noted Plaintiff's description of his activities after his alleged onset date, including fishing and other hobbies, the ability to attend to his own personal grooming needs, and the ability to drive a motor vehicle and run errands.  Tr. 16-17.  The ALJ noted that these activities were possible even considering Plaintiff's combination of impairments, including obesity.  Tr. 17.  He found that Plaintiff's exertional capabilities were compromised but not to the degree alleged.  *Id*.  The ALJ thus found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible.  Tr. 17-18.

The ALJ found that Plaintiff retained the RFC to perform a partial range of work at the medium exertional level.  Tr. 17.  He noted that a person who retains the ability to perform a partial range of work at the medium level can also perform work at the light and sedentary levels, citing 20 C.F.R. § 414.1567.  *Id*.  He also noted that Plaintiff described his past relevant work as a truck driver as requiring lifting less than 10 pounds frequently and no more than 10 pounds occasionally and requiring sitting most of the time.  Tr. 18.  He found that this job was consistent with the demands of work at the light exertional level.  *Id*.  The ALJ found that Plaintiff could return to his past relevant work as a truck driver as he performed it and, therefore, found that Plaintiff was not disabled. Tr. 18-19.

On April 17, 2002, Plaintiff submitted a Request for Review of Hearing Decision/Order which included a request for copies of the hearing tape and the medical exhibits and a request for a 60-day extension to submit additional evidence.  Tr. 9-10.  On October 20, 2003, the Appeals Council provided Plaintiff with the requested materials and granted a 30-day extension.  Tr. 7-8.  The Appeals Council issued its opinion on August 27,  2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request.  Tr. 4-6.  The ALJ's decision, therefore, became the final decision of the Commissioner.

On October 4, 2004, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453.  In this case, the ALJ found at step 4 that Plaintiff was not disabled because he could return to his past relevant work as a truck driver.  Tr. 18, 19.

## III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence and/or resulted from an error of law because the ALJ failed to give the opinion of the treating physician controlling weight, failed to use a vocational expert ("VE"), and made a vocational finding that was not consistent with the *Dictionary of Occupational Titles* ("DOT")[2].

**A.     Whether the ALJ erred in considering the opinion of Plaintiff's treating physician.**

Plaintiff argues that the ALJ erred by failing to give the opinion of his treating physician, Alan C. Harwicke, M.D., controlling weight.  Plaintiff notes that Dr. Hardwicke opined that it was difficult for Plaintiff to work as most of the jobs that he is able to do require him to be up sitting or standing, which caused his leg to swell.  *See* Tr. 117.  Plaintiff further argues that the ALJ failed to appropriately weigh, consider, and discuss the factors set forth in 20 C.F.R. § 404.1527(d)(2) and *Newton*, 209 F.3d at 456, in rejecting Dr. Hardwicke's opinion.

---

[2]     *See*  United States Dept. of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991)("DOT").

The ultimate issue is whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

The record demonstrates that Dr. Hardwicke indicated in a letter dated May 4, 2000, that Plaintiff had severe deep vein thrombosis in his leg and had problems with swelling in the leg if he is up for every long.  Tr. 117.  Dr. Hardwicke indicated that it was difficult for Plaintiff to perform the jobs that he is able to do because they "require him to be up sitting or standing, which makes the leg swell." *Id.*  His progress note dated February 27, 1998, indicates Plaintiff's history of DVT, and he noted that Plaintiff's legs "seem to be doing alright."  Tr. 125.  On February 26, 1999, Dr. Hardwicke noted Plaintiff's report of swelling in both legs.  Tr. 122.  Plaintiff reported pain and swelling of the left leg on April 28, 2000.  Tr. 118.  A progress note dated June 20, 2000, notes Plaintiff's report of pain which worsened with swelling and which was better with elevation.  Tr. 116.  Dr. Hardwicke indicated that Plaintiff's postphlebitic pain "continues to be disabling." *Id.*  Plaintiff reported continued pain on September 27, 2000, as well as pain from a hernia.  Tr. 114.  However, on January 1, 2001, Dr. Hardwicke noted that Plaintiff's leg was "without excessive swelling" and opined that Plaintiff's postphlebitic syndrome was stable.  Tr. 113.

Plaintiff underwent an internal medicine consultative examination by Gunnam Ramachandran, M.D., on October 24, 2000.  Tr. 217.  The consultative examiner ("CE") noted upon examination that there was 2+ swelling of the left lower extremity with stasis dermatitis of the left leg and varicose veins.  Tr. 217.  Plaintiff's discharge notes from Lanoard M. Bayouth, II, M.D., who treated Plaintiff at the Hendrick Medical Center, noted that there was evidence of venous stasis in the left lower leg, and trace edema of the left ankle.  Tr. 299.  Dr. Udaya S. Swarna, a cardiologist who examined Plaintiff, noted no clubbing, cyanosis, or edema of the extremities on December 26,

2000. Tr. 514. Dr. Bayouth also reported in a discharge summary dated December 28, 2000, that no clubbing, cyanosis, or edema of the extremities was noted. Tr. 156. Trace pedal edema was noted by another physcian on December 26, 2000. Tr. 515. Robert L. Lawson, M.D., noted no clubbing, cyanosis, or edema of the extremities and also noted no calf pain, swelling, or tenderness bilaterally. Tr. 444. On July 22, 2001, Plaintiff sought treatment at the emergency room for leg pain. Tr. 363. Some swelling in his left leg was noted. Tr. 364. A left leg venous doppler exam was performed which showed no evidence of DVT. Tr. 367. Dr. David R. Blackwood performed a cardiologist consultation on July 28, 2000, and noted no significant ankle edema except for dependent edema in the left leg. Tr. 191. On April 5, 2001, Plaintiff underwent another venous doppler study of the lower extremities. Tr. 468. No evidence of any DVT was noted, although there was some mild venous incompetence. *Id*.

Plaintiff argues that the ALJ erred by failing to give controlling weight to Dr. Hardwicke's opinion indicating that it was difficult for Plaintiff to work, as most of the jobs that he is able to do require Plaintiff to be up sitting or standing, which makes his leg swell. Tr. 117. The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

Under the applicable regulations, unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion.  20 C.F.R. § 416.1527(d).  The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton,* 209 F.3d at 456.  Plaintiff argues that the ALJ erred by failing to discuss and apply the factors set forth in 20 C.F.R. § 416.1527(d) in discounting Dr. Hardwicke's May 4, 2000, opinion.

The record clearly indicates that Plaintiff experienced swelling of his left leg.  Tr. 189.  However, the various treatment providers have later noted only trace or no edema.  Tr. 192, 299, 442.  Later testing also indicated no DVT but rather mild venous incompetence.  Tr. 367, 468.  Dr. Blackwood noted that Plaintiff was sedentary in nature and opined that Plaintiff should undertake a regular exercise program.  Tr. 192.  Dr. Hardwicke's treatment and progress notes do not indicate specific functional limitations on sitting or standing.  To the extent that Dr. Hardwicke indicated that Plaintiff has difficulty working, such opinion is not entitled to great weight.  "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'  These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)(citing 20 C.F.R. § 404.1527(e)(1)).

In his opinion the ALJ noted Plaintiff's history of circulation problems in his left leg since 1993.  Tr. 15.  He discussed the findings in April and May 2001 indicating trace edema and no DVT.  *Id*.  He noted Plaintiff's use of a wheelchair and wheeled walker, as well as his testimony of being able to walk outside of the house.  Tr. 15, 40-41, 46.  The ALJ ultimately did not accept or adopt Dr. Hardwicke's conclusional statement indicating that it is "difficult for [Plaintiff] to work."  This statement was not supported by Dr. Hardwicke's own treatment and progress notes and conflicts

-8-

with the notes and opinions of the other treating physicians.  "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).  The task of weighing the evidence is the province of the ALJ.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  The relative weight to be given these pieces of evidence is within the ALJ's discretion.  *Id.*  Here, the ALJ appropriately considered the records of various treatment providers as well as Plaintiff's reports of his activities.

Moreover, it is the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion.  *See* 20 C.F.R. §§ 416.946, 416.927(e).  The ALJ is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion.  Rather, the ALJ has the sole responsibility for weighing the evidence, may choose whichever physician's diagnosis is most supported by the record, and may incorporate into the RFC assessment the limitations supported by that diagnosis or diagnoses.  *See Muse*, 925 F.2d at 790. Dr. Hardwicke's letter opinion did not indicate specific functional limitations and was not supported by his own treating notes and record or by other evidence in the medical record.  The ALJ appropriately exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record.  *Muse*, 925 F.2d at 790.  The record further demonstrates that the ALJ did not fail to "give *any* weight to the opinions of the claimant's treating specialist."  *Newton,* 209 F.3d at 456 (emphasis supplied).  Rather, he appropriately considered the evidence in the record as a whole, including the evidence of Plaintiff's other treatment providers.

I find that the ALJ did not err by failing to appropriately consider Dr. Hardwicke's opinion as a treating physician nor was he required to discuss each of the factors set forth in 20 C.F.R. § 404.1527(d).

**B.** **Whether the ALJ erred by failing to obtain VE testimony and by making a vocational finding which conflicted with the DOT.**

Plaintiff argues that the ALJ erred in finding that he could return to his past relevant work as a truck driver.  Plaintiff notes that the DOT defines the job of truck driver in four categories as medium level work, with lifting of 20 to 50 pounds occasionally.  Plaintiff correctly notes that the ALJ did not obtain testimony from a VE before finding that Plaintiff's past relevant work as a truck driver required no greater than light exertion.

The record demonstrates that the ALJ found in his decision that Plaintiff's past relevant work as a truck driver was performed at no more than the light exertional level as Plaintiff actually performed it.  Tr. 18.  The ALJ relied upon Plaintiff's own description of his past work.  *See* Tr. 18, 32-33, 63.

To determine whether Plaintiff could perform his former work as a truck driver, the ALJ was required to assess the physical demands of those jobs. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990)(citing *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988)).  This determination may rest on descriptions of past work as actually performed or as generally performed in the national economy. *Id.* (citing *Jones v. Bowen*, 829 F.2d 524, 527 n.2 (5th Cir. 1987)). The ALJ may take notice of job data in the DOT which reflects the exertional requirements of a job as performed in the national economy. *Id.* (citing 20 C.F.R. § 404.1566(d)(1)).  The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and nonexertional demands of such work. *See* Social Security Ruling 82-62 (August 20, 1980). To establish a prima facie case of disability, Plaintiff had to show that he could no longer perform his former work. *Hollis*, 837 F.2d at 1386.  In evaluating the evidence  Plaintiff presented to meet his burden, the ALJ was required to determine both the physical demands of the particular type of work that Plaintiff  had done and

to compare those demands with his present capabilities.  *Id.* (citing *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir.1980)).

In his opinion the ALJ appropriately relied upon Plaintiff's descriptions of his past work as a truck driver in determining the exertional demands of this job.  He also found that Plaintiff retained the RFC for a partial range of work at the medium exertional level.  He was not required to obtain the testimony of a VE.  The record contained adequate documentation of the requirements of Plaintiff's past work for the ALJ to make his finding.  *See* SSR 82-62.  I find that the ALJ did not err in finding that Plaintiff could perform his past relevant work and was not required to obtain the testimony of a VE, having appropriately relied upon Plaintiff's testimony and descriptions of the exertional and functional requirements of his work as it was actually performed.

## IV.  CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.

Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

      DATED this 9th day of March, 2006.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**